# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## NOVEMBER 1997 SESSION

FILED

February 4, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 02C01-9611-CR-00381 |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. ARTHUR T. BENNETT, |
| JASON M. WEISKOPF, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (First Degree Murder) |

**FOR THE APPELLANT:**

LESLIE I. BALLIN
MARK A. MESLER
200 Jefferson Avenue, Suite 1250
Memphis, TN 38103

**FOR THE APPELLEE:**

JOHN KNOX WALKUP
Attorney General and Reporter

ELIZABETH T. RYAN
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

WILLIAM L. GIBBONS
District Attorney General

THOMAS D. HENDERSON
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN 38103

OPINION FILED: _____

REVERSED AND REMANDED

JOE G. RILEY,
JUDGE

**O P I N I O N**

Defendant, Jason M. Weiskopf, was convicted by a Shelby County jury of premeditated first degree murder and sentenced to life imprisonment. He presents the following issues for our review:

> (1) whether the evidence was sufficient to support the conviction for premeditated first degree murder;
>
> (2) whether the trial court erred in allowing the admission of photographs of the victim's body; and
>
> (3) whether the trial court erred in charging the jury on parole eligibility.

Finding plain error in the parole eligibility jury charge, we REVERSE the judgment of the trial court and remand for a new trial.

## FACTS

The state's proof revealed that the defendant and the victim were both employed at the Ridgeway McDonald's in Memphis. On September 13, 1994, a day prior to the homicide, the defendant and the victim had a verbal altercation in the cooking area. That night the defendant told a fellow employee, Cornelius Buchanan, that he intended to shoot the victim the next morning since he was tired of being called "bitches and whores" by the victim.

The next morning at approximately 2:50 a.m., Mary Lee, the opening manager for McDonald's, arrived at the Ridgeway location to prepare for the 5:00 a.m. opening. Both the defendant and the victim were scheduled to report at 4:00 a.m.

Shortly before 4:00 a.m., Jafus Miller, another employee, heard three (3) shots while he was sitting in his vehicle. He assumed, however, that they were firecrackers. Lee also heard a noise about that time, yet did not realize it was gunfire.

When the employees did not report to work at 4:00 a.m., Lee tried to reach the defendant by phone and was told he had already left for work. At approximately

2

4:15 a.m., the defendant called her and actually arrived at work at 4:22 a.m.

Shortly thereafter, Miller discovered the victim's body in the McDonald's parking lot. The victim had been shot once in the back and twice in the face. The autopsy report revealed that the victim died as a result of these gunshot wounds.

On the date of the shooting the defendant told Buchanan, "I told you I was gonna kill Marquese." Buchanan did not believe the defendant. The following day the defendant again told Buchanan that he had shot the victim. He stated that he had walked up to the victim in the parking lot, shook his hand and apologized for the prior altercation. When the victim turned his back, the defendant said, "You mother f _ _ _ _ _" and shot the victim in the back. Defendant related that the victim pled for his life just prior to defendant's shooting him twice in the face. The defendant stated, "the mother f _ _ _ _ _ s at work will respect me now." Defendant further stated he felt no guilt as a result of the shooting.

The defendant was interviewed by the homicide division at approximately 1:00 p.m. on the date of the homicide. He denied shooting the victim.

Upon gathering other information, the authorities arrested defendant on September 16, 1994. At the time of his arrest he stated that he knew who "had snitched on him." Upon being interrogated, the defendant stated that he shot the victim because he was "messing with me. He was going to shoot me eventually." He stated that he waited for the victim to arrive at McDonald's prior to the shooting. He further conceded that the victim was not armed with a weapon and made no mention that the victim did anything to him just prior to the shooting. The defendant stated he was simply afraid that the victim would eventually shoot him. Defendant also took the authorities to a dumpster where he had thrown the murder weapon. The weapon was recovered.

The defense proof consisted of another fellow employee, Morris Robinson, who testified that both the defendant and victim had threatened each other on prior occasions. He further testified that the defendant had told him prior to trial that he thought the victim was going for a gun at the time of the shooting.

The defendant elected not to testify, and there was no further defense proof.

3

## SUFFICIENCY OF THE EVIDENCE

### A

In determining the sufficiency of the evidence, this court does not reweigh or re-evaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn.1992). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Matthews, 805 S.W.2d 776, 780 (Tenn. Crim. App. 1990). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offenses beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e).

### B

At the time of the homicide the premeditated first degree murder statute required that the state prove that the murder was "intentional, premeditated and deliberate." Tenn. Code Ann. § 39-13-202(a)(1)(1991).[1] The necessary elements of first degree murder may be shown by circumstantial evidence. State v. Brown, 836 S.W.2d 530, 541 (Tenn. 1992). Premeditation requires "a previously formed design or intent to kill" and "the exercise of reflection and judgment." State v. West, 844 S.W.2d 144, 147 (Tenn. 1992); Tenn. Code Ann. § 39-13-201(b)(2)(1991). Deliberation necessitates a finding that the defendant acted with a "cool purpose"

---

[1] Tenn. Code Ann. § 39-13-202(a)(1) has now been amended to delete the "deliberate" requirement. Tenn. Code Ann. § 39-13-202(a)(1)(1997).

and not from "passion or provocation." Tenn. Code Ann. § 39-13-201(b)(1)(1991) and Sentencing Commission Comments.

Once a homicide has been proven, the homicide is presumed to be murder in the second degree with the state having the burden of establishing premeditation and deliberation. State v. Brown, 836 S.W.2d at 543. In considering the elements of premeditation and deliberation, the court may consider several factors, including the use of a deadly weapon upon an unarmed victim, whether the killing was particularly cruel, declarations by the defendant of his intent to kill the victim, planning activity by the defendant prior to the killing, evidence concerning the defendant's motive and the nature of the killing. State v. Brown, 836 S.W.2d at 541-542; State v. Pulliam, 950 S.W.2d 360, 367 (Tenn. Crim. App. 1996).

## C

The evidence is sufficient to support an intentional, premeditated and deliberate killing of the victim. The defendant and victim had a verbal altercation on the day prior to the homicide. On that same date the defendant told a co-worker that he intended to shoot the victim the next morning. The victim was shot in the back while unarmed and twice more in the face after pleading for his life. That same date the defendant confessed to the killing to a co-worker and indicated no remorse. Furthermore, defendant's confession establishes an intentional, premeditated and deliberate murder that was not committed in self-defense.

This issue is without merit.

## PHOTOGRAPHS

In his second issue, defendant contends the trial court erred by allowing the state to introduce photographs that depict the victim lying in a pool of blood. More specifically, he contends the prejudicial effect of the photographs far outweighs any probative value.

The admissibility of photographs lies within the sound discretion of the trial court whose ruling will not be overturned on appeal except upon a clear showing of

5

an abuse of discretion. State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978); *see also* State v. Stephenson, 878 S.W.2d 530, 542 (Tenn. 1994); State v. Bordis, 905 S.W.2d 214, 226 (Tenn. Crim. App. 1995). Nevertheless, the photographs must be relevant to an issue at trial with their probative value outweighing any prejudicial effect that they may have upon the trier of fact. State v. Braden, 867 S.W.2d 750, 758 (Tenn. Crim. App. 1993).

We, therefore, must firstly determine whether the photographs were relevant. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

We conclude the photographs were indeed relevant. The photographs reveal the presence of a Krystal cup, paper bag and car keys near the victim's body. It is apparent from the photographs that the victim had been shot while holding these items. There was no weapon. Since self-defense was an issue at trial, the photographs were relevant.

Furthermore, the photographs were not particularly inflammatory and were not "closeups." We conclude the trial court did not abuse its discretion in finding that the probative value of the photographs outweighed any prejudicial effect.

This issue is without merit.

## PAROLE ELIGIBILITY JURY CHARGE

Defendant contends the trial court erred by charging the jury as to the range of punishment since he withdrew his request for this charge. He further contends the jury charge setting forth the earliest release eligibility date was inaccurate.

### A

Prior to trial both the defendant and the state filed a written request that the jury be charged as to range of punishment pursuant to Tenn. Code Ann. § 40-35-201. Prior to the jury charge the defendant objected to the charge; however, the state continued in its request that the charge be given. Tenn. Code Ann. § 40-35-

6

201(b)(1) provides that the range of punishment shall be charged "upon the motion of either party." The trial court, therefore, did not err by charging range of punishment even though the defendant had withdrawn his request.

## B

The trial court charged the jury that the range of punishment for second degree murder was not less than 13.5 years nor more than 60 years with the earliest release eligibility date being 1.06 years. The range of punishment for voluntary manslaughter was given at not less than 2.7 years nor more than 15 years with the earliest release eligibility date being .21 years. Defendant contended at trial the earliest release eligibility date should have been twenty percent (20%) of 13.5 years or 2.7 years for second degree murder and twenty percent (20%) of 2.7 years or 0.5 years for voluntary manslaughter. It is obvious that the defendant based his argument upon the twenty percent (20%) release eligibility percentage for mitigated offenders as established by Tenn. Code Ann. § 40-35-501(b). However, Tenn. Code Ann. § 40-35-201(b)(2)(A)(i) provides that the jury charge on the "earliest release eligibility date" include not only the "release eligibility percentage" established by Tenn. Code Ann. § 40-35-501, but also certain sentence reduction credits and the governor's power to reduce prison overcrowding. The Department of Correction is to periodically provide each judge with these approximate calculations. Tenn. Code Ann. § 40-35-201(b)(2)(B). Defendant's contention relating to the calculation of the earliest release eligibility date is without merit.[2]

---

[2]The defendant did not in the trial court nor does he in this Court contend that the actual calculation of the earliest release eligibility date was inaccurate based upon the statistical information furnished by the Department of Correction. This information is not a part of the record before us.

**C**

**(1)**

Although the defendant challenges the parole eligibility jury charge in this Court, he does not specifically base his contention upon constitutional grounds. In the trial court the defendant made a general objection to the parole eligibility jury charge on the basis of constitutional infirmity; however, no specific constitutional basis was expressed. Accordingly, we are constrained to conclude that the constitutionality of the parole eligibility jury charge has not been specifically presented as an issue for our review.

Nevertheless, our "plain error rule" provides that an error affecting the "substantial rights of the accused may be noticed at any time where necessary to do substantial justice." Tenn. R. Crim. P. 52(b). We find the parole eligibility jury charge, under the facts and circumstances of this case, contained such egregious and fundamental error that it affected the fairness and integrity of the judicial proceedings; therefore, we find plain error. *See* State v. Stephenson, 878 S.W.2d 530, 553-554 (Tenn. 1994); State v. Adkisson, 899 S.W.2d 626, 639-640 (Tenn. Crim. App. 1994).

**(2)**

Pursuant to Tenn. Code Ann. § 40-35-201(b)(1), the jury was instructed as to the range of punishment for the various offenses along with the earliest release eligibility dates. The jury was further instructed they could weigh and consider the meaning of a sentence of imprisonment. The function of a jury in Tennessee is to determine guilt or innocence, not the length of imprisonment. Tenn. Code Ann. § 40-35-201(a). As provided by statute, this jury was implicitly instructed that they could consider punishment in determining the guilt or innocence of the defendant. In short, they were told they could consider extraneous information that had nothing whatever to do with guilt or innocence in arriving at their verdict.

8

Unquestionably, this jury instruction is in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, § 8 of the Constitution of Tennessee. One accused of a crime is entitled to have his or her guilt or innocence determined solely on the basis of the evidence introduced at trial and not other circumstances not adduced as proof at trial. Taylor v. Kentucky, 436 U.S. 478, 485, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978); Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). Advising a jury that it can consider punishment allows consideration of extraneous information, not adduced as proof, that in no way relates to their determination of guilt or innocence. Since the earliest release eligibility date for some offenses seems ridiculously low, consideration of such information could be prejudicial to a defendant.

**(3)**

Erroneous jury instructions are subject to a harmless error analysis. Rose v. Clark, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); State v. Bush, 942 S.W.2d 489, 505 (Tenn. 1997); State v. Belser, 945 S.W.2d 776, 782 (Tenn. Crim. App. 1996). Under the facts and circumstances of this case, however, we are unable to conclude that the error was harmless.

At trial it was abundantly clear that the defendant unlawfully took the life of the victim. The primary issue for the jury was whether this was a premeditated first degree murder, second degree murder or voluntary manslaughter. In final argument defense counsel contended the evidence, at most, supported a lesser offense. The jury was then charged by the trial court that the earliest release eligibility date for first degree murder was twenty-five (25) years; the earliest release eligibility date for second degree murder was 1.06 years; and the earliest release eligibility date for voluntary manslaughter was .21 years. The jury was also instructed that they could weigh and consider this sentencing information.

We have no way of knowing whether the jury did in fact consider this sentencing information in their determination of guilt. Thus, we do not know

9

whether the ridiculously low, earliest release eligibility dates of 1.06 years and .21 years for second degree murder and voluntary manslaughter, as compared to the earliest release eligibility date of twenty-five (25) years for first degree murder, had any affect upon, or was even discussed by, the jury. Nevertheless, we are unable to conclude that this information had no impact upon the jury <u>since the primary question for the jury in this case was the degree of homicide</u>.

**(4)**

A member of this panel, Judge Hayes, has previously concluded that the parole eligibility jury instruction is unconstitutional. *See* <u>State v. Cooper</u>, C.C.A. No. 01C01-9604-CC-00150, Lincoln County (Tenn. Crim. App. filed November 17, 1997, at Nashville) (Hayes, J., Concurring). The other two (2) members of this panel have previously upheld the constitutionality of the parole eligibility jury instruction. *See* <u>State v. David Palmer</u>, C.C.A. No. 01C01-9607-CR-00285, Davidson County (Tenn. Crim. App. filed November 20, 1997, at Nashville); <u>State v. William K. Howell</u>, C.C.A. No. 01C01-9610-CR-00443, Davidson County (Tenn. Crim. App. filed November 6, 1997, at Nashville); <u>State v. Dwjuan L. Bradford</u>, C.C.A. No. 01C01-9607-CR-00294, Davidson County (Tenn. Crim. App. filed September 30, 1997, at Nashville). However, the precise issue of telling the jury they could consider irrelevant information in determining guilt or innocence was not raised in these latter three (3) cases.

**(5)**

In spite of the fact that the evidence is sufficient to sustain a verdict of premeditated first degree murder, the parole eligibility jury instruction unconstitutionally informed the jury that they could consider extraneous and irrelevant information in determining guilt or innocence. This error was indeed egregious and fundamental. Since we are unable to determine under the facts and

10

circumstances of this case whether or not it had any impact upon the jury's verdict, the only remedy is the granting of a new trial.

## CONCLUSION

For the above reasons, the judgment of the trial court is reversed and the case remanded for a new trial.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**GARY R. WADE, JUDGE**

_____
**DAVID G. HAYES, JUDGE**

11